```
                    UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
                            Norfolk Division
```

**ISAAC LAGRANT WALKER, #346071**

        Petitioner,

v.                                                            2:07CV447

**GENE M. JOHNSON, Director of the
Virginia Department of Corrections,**

        Respondent.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

### I. STATEMENT OF THE CASE

#### A. Background

On May 9, 2005, in the Circuit Court of Prince William County, Virginia, petitioner was convicted of second degree murder and was sentenced to twenty years imprisonment. Petitioner appealed to the Virginia Court of Appeals, but on December 20, 2005, the appeal was denied. Petitioner then appealed to the Supreme Court of Virginia, which refused the appeal on May 3, 2006. Petitioner filed a petition for writ of habeas corpus in the Supreme Court of Virginia, but on August 28, 2007, the petition was dismissed.

On September 24, 2007, petitioner filed a petition for writ of habeas corpus in this Court, and on November 14, 2007, respondent filed a motion to dismiss and Rule 5 answer. This matter is now ripe for consideration.

### B. Grounds Alleged

Petitioner alleges the following grounds:

1. Petitioner was denied effective assistance of counsel because counsel failed to:

   a. use a written statement by Ann Carwile repudiating her prior statements to police to impeach her at trial;

   b. file a motion for Carwile to assert the spousal privilege despite his promise to do so;

   c. introduce evidence to prove petitioner and Carwile were legally married;

   d. lay a proper foundation to base his closing argument regarding the angle of the fatal wound;

2. Petitioner was denied his right to confront witnesses because the trial judge improperly permitted hearsay testimony; and

3. The evidence was insufficient to support a conviction of second degree murder.

### II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993). The courts must construe the complaint liberally in favor of the plaintiffs, even if

2

recovery appears remote and unlikely.  In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference.  See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### B.  Standard of Review for State Court Findings

The federal statute regarding review of state court habeas corpus actions provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2000).

This standard, adopted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, is consistent with the Fourth Circuit's interpretation of 28 U.S.C. § 2254(d) prior to the passage of the new law.  In Fields v. Murray, 49 F.3d 1024 (4th Cir. 1995), the court held that a review of a state court finding, which is entitled to a presumption of correctness, compels the habeas court to accord a high measure of deference to the state court.  See id. at 1032-33 (citing Rushen v. Spain, 464 U.S. 114, 120 (1983); Sumner v. Mata, 455 U.S. 591, 598 (1982)).  As stated in Marshall v. Lonberger, 459 U.S. 422 (1983), "[t]his deference requires that a federal habeas court more than

3

simply disagree with the state court before rejecting its factual determinations.  Instead, it must conclude that the state court's findings lacked even 'fair [] support' in the record." Id. at 432.

### C. Petitioner's Claims are Exhausted and are Subject to Federal Review.

The exhaustion requirement dictates that a petitioner must first present his claims for relief to state courts before a petition for habeas corpus may be granted by the federal courts.

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
>   (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i)  there is an absence of available State corrective process; or
>
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . . .
>
>   (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)-(c)(2000).

A claim raised in a federal petition for writ of habeas corpus must be the same claim as that presented in state proceedings. See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Pitchess v. Davis, 421 U.S. 482, 487 (1975); Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999); Beck v. Angelone, 113 F. Supp.2d 941, 960-61 (E.D. Va. 2000); see also Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513 U.S. 364, 365 (1995); Satcher v. Pruett, 126 F.3d 561, 573 (4th Cir.

4

1997). Respondent concedes, and the Court agrees, that for purposes of federal review, petitioner's claims are exhausted.

### D. Petitioner did not receive ineffective assistance of counsel.

The standards upon which claims of ineffective assistance of counsel are to be judged are relatively clear. They were established in Strickland v. Washington, 466 U.S. 668 (1984), and have been applied on numerous occasions by this Court. In Strickland, the Supreme Court approved as the proper standard for attorney performance that of "reasonably effective assistance." Id. at 687. The Court stated:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 686-87.

There are, therefore, two elements of the Strickland test, each of which must be met before the conduct of counsel can be found constitutionally defective. First, petitioner must show that he received deficient legal representation, measuring the competency of his counsel

5

against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Petitioner must also show actual prejudice; that is, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494 (1986); Poyner v. Murray, 964 F.2d 1404, 1425 (4th Cir. 1992)).

The burden on petitioner is to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. That translates into a reasonable probability that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In analyzing trial counsel's performance under the "deficiency" prong of Strickland, a reviewing court is required to be highly deferential in scrutinizing counsel's tactics. See Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996). Further, reviewing courts are admonished to "not permit the benefit of hindsight to impact . . . review." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995)(citing Strickland, 466 U.S. at 689).

Petitioner alleges that his counsel was ineffective by failing to use a written statement by Ann Carwile repudiating her prior statements to police to impeach her at trial, (Claim 1(a)). The statement petitioner refers to is a letter written by Carwile, stating that she should not be held responsible for any statements, written or oral, made between April 14, 2004 (the date of the murder), and April 29, 2004, due to her emotional state. (Pet. Ex. 1, Letter of Anne G. Carwile

6

dated April 29, 2004.) The letter does not repudiate any of Carwile's previous statements nor does it claim that any of her previous statements were inaccurate. The letter merely addresses Carwile's emotional state during that time frame and states that she did not remember what she said in her first statements. Carwile's statements were not admitted into evidence during petitioner's trial, but, more importantly, they were made almost one year after the letter was written. Petitioner has failed to demonstrate how counsel's failure to present the letter resulted in 'actual and substantial disadvantage' or how the letter would have been admissible. The claim is without merit and should be DISMISSED.

Petitioner alleges that counsel failed to file a motion for Carwile to assert spousal privilege, (Claim 1(b)). The Supreme Court of Virginia found that petitioner and Carwile were not legally married, therefore, petitioner and Carwile were not entitled to invoke spousal privilege. Walker v. Warden, S.Ct. Rec. No. 070476, August 28, 2007 Ord. at 2.) State court findings are given deference, and the state's finding that there was no legal marriage is supported by the record. The testimony of both petitioner and Carwile included references to their non-marital relationship in that petitioner referred to Carwile as his girlfriend and Carwile confirmed that they were not married legally by the state of Virginia. (Tr. 67-68; 92-93.) Moreover, the ceremonial certificate presented by petitioner does not meet the license requirement under section 20-13 of the Virginia Code.

Counsel was not ineffective by failing to make a motion that would have no benefit to petitioner's case. Petitioner has failed to demonstrate that counsel's performance was deficient or that he was prejudiced in any way. The claim is without merit and should be DISMISSED.

Petitioner alleges that counsel was ineffective by failing to introduce evidence to prove petitioner and Carwile were legally married, (Claim 1(c)). For the same reasons stated above, counsel did not act unreasonably. Moreover, petitioner has failed to demonstrate that but for counsel's error, the state court's determination on the legality of the marriage would have changed. The claim is without merit and should be DISMISSED.

Petitioner alleges that counsel was ineffective by failing to lay a proper foundation for his closing argument regarding the angle of the fatal wound, (Claim 1(d)). Petitioner has failed to demonstrate that counsel was deficient in his performance and that prejudice resulted. The record demonstrates that the medical examiner (ME) was questioned regarding the angle of the wound, and he stated that the wound had an upward angle. (Tr. at 89.) Thus, petitioner has failed to demonstrate that counsel was ineffective or that petitioner was prejudiced as a result. The claim is without merit and should be DISMISSED.

### **E. Procedural Default**

Under Virginia law, a claim included in a petition for habeas corpus will be barred if an objection was not raised at trial and the objection presented on direct appeal. In <u>Coppola v. Warden of Virginia State Penitentiary</u>, 282 S.E.2d 10 (Va. 1981), the Supreme Court of Virginia held that to preserve an issue for appeal and for a habeas corpus proceeding, the issue must be timely objected to at trial. Rule 5:25 of the Supreme Court of Virginia states the contemporaneous objection rule:

> Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling . . . .

Va. S.Ct. R. 5:25.

The Supreme Court has stated that: "Under Virginia law, failure to raise a claim on direct appeal from a criminal conviction ordinarily bars consideration of that claim in any subsequent state proceeding." Smith v. Murray, 477 U.S. 527, 533 (1986). The Fourth Circuit has held that if a claim is procedurally barred in Virginia courts because it was not brought on direct appeal, it will also be barred in the federal system. Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).[1] In Whitley v. Bair, 802 F.2d 1487 (4th Cir. 1986), the court held that the failure of an inmate to directly appeal his conviction to the Supreme Court deprives

> the Virginia Supreme Court of the opportunity to rule on the merits of his claims. We consider such failure to constitute a violation of the requirements of Rule 5:21, which applies to appeals of all Virginia cases, civil or criminal, and conclude that such violation constitutes a procedural default sufficient to preclude federal court review of the merits . . . .

Id. at 1502 (citing Va. S.Ct. R. 5:21, repealed and reinstated in substantially similar form as, Va. S.Ct. R. 5:17, 5:25). In Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), the Virginia Supreme Court stated a similar proposition: "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error." The Supreme Court of the United States recently addressed the same issue in Coleman v. Thompson, 501 U.S. 722 (1991). The Court held that the doctrine of procedural default will bar a federal habeas petition when

---

[1] The court in Bassette relied on section 8.01-654(B)(2) of the Virginia Code. Bassette, 915 F.2d at 936. Section 654 (B)(2) states: "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." VA. CODE ANN. § 8.01-654 (B)(2)(Michie 1992).

9

a prisoner fails to meet a state procedural requirement.  Id. at 750. Speaking for the Court, Justice O'Connor said:

> We now make it explicit:  In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. . . . We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them.

Id. at 750.

Moreover, the federal court is required to dismiss a procedurally defaulted claim absent a showing of justifiable cause resulting in actual prejudice.  Wainwright v. Sykes, 433 U.S. 72 (1977). Petitioner has not made a showing of justifiable cause for his failure to appeal the aforementioned issues to the Court of Appeals and the Supreme Court of Virginia.  Therefore, the issue of actual prejudice need not be addressed.

Petitioner alleges that he was denied the right to confront witnesses when the trial court improperly permitted hearsay testimony, (Claim 2).  Although petitioner raised the issue in his state habeas petition, the Supreme Court of Virginia dismissed the claim pursuant to Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974), because petitioner failed to raise the issue at trial or on appeal.  Therefore, the claim is procedurally defaulted before this Court and should be DISMISSED.

### F.  The Evidence at Trial Was Sufficient to Support a Conviction.

The standard of review in a habeas corpus proceeding is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324 (1979). In Wright v. West, 505 U.S. 277 (1992), the Supreme Court held that:

> In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that "all of the evidence is to be considered in the light most favorable to the prosecution," that the prosecution need not affirmatively "rule out every hypothesis except that of guilt," and that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

Id. at 207-97 (citations omitted). In the present case the Court has fully reviewed the trial transcripts and has determined that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convict petitioner. Petitioner argues for the application of hindsight to what were issues of weight and credibility, properly resolved by the trier of fact.

Petitioner alleges that the evidence at trial was insufficient to support his conviction for second degree murder, (Claim 3)). When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found the evidence sufficient to prove second-degree murder beyond a reasonable doubt.

According to the testimony of Carwile, and petitioner himself, petitioner initiated a meeting with the victim by telephone. (Tr. at 70-71; 100-01.) Carwile stated that petitioner was "upset" and was "yelling" about her relationship with the victim. (Tr. at 73.) Petitioner testified that during the meeting, he and the victim started "verbally attacking one another," which escalated into a physical

11

altercation. (Tr. at 107-09.) At the end of the altercation, the victim was holding his side and told petitioner that he had "struck" him. (Tr. at 108-09.) The victim then got in his car, with a stab wound in his abdomen, and drove to a nearby store, where witnesses contacted emergency services. The store owner, testified that she was told by the victim that petitioner had stabbed him. (Tr. at 48.)

Petitioner testified that he left the scene of the altercation and drove at least sixteen miles to another store and contacted the emergency dispatcher from a payphone. (Tr. at 61; 111.) During the 911 call, petitioner mentioned the presence of a knife. (Tr. at 120.) The statement is inconsistent with a later statement in which petitioner indicated that he did not see a knife. (Tr. at 121.) Petitioner testified during trial that he never saw a knife but may have seen an object. (Tr. at 109.)

Officers W. Brandt, III and Officer T.D. Lacks testified that the knife was not found on petitioner, in his vehicle, or near the place where he was apprehended. (Tr. at 32; 54.) Furthermore, a search of the victim's car also failed to produce the knife. (Tr. at 59.) While a pocketknife was found on the victim, it was determined to be too small to have been the murder weapon. (Tr. at 87.)

Petitioner's flight from the scene of the altercation and from the police was considered by the trial judge as evidence of guilt. The trial judge considered the evidence, and petitioner's demeanor and other witnesses, and determined that petitioner had stabbed the victim and he had disposed of the knife before he was taken into custody.

The Virginia Court of Appeals dismissed the claim, confirming the findings of the trial court. The Supreme Court of Virginia also ratified the findings of the trial court when it refused petitioner's appeal. Likewise, this Court finds that the evidence, when viewed in the

light most favorable to the prosecution, was sufficient to convict petitioner of second degree murder.  The claim is without merit and should be DISMISSED.

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DISMISSED and respondent's motion to dismiss be GRANTED.  Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.  See Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  See 28 U.S.C. § 636(b)(1)(C)(2000); FED.R.CIV.P. 72(b).  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
**James E. Bradberry**
**United States Magistrate Judge**

**Norfolk, Virginia**

**May 27, 2008**

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of the following:

    Isaac Lagrant Walker, #346071, <u>pro</u> <u>se</u>
    Lawrenceville Correctional Center
    1607 Planters Road
    Lawrenceville, VA  23868


    Alice T. Armstrong, Esq.
    Assistant Attorney General of Virginia
    900 E. Main Street
    Richmond, VA  23219


                           Fernando Galindo, Clerk


                           By _____
                                 Deputy Clerk

                       _____, 2008